CHAPLAINE REALTY AND CONSTRUCTION COMPANY, Respondent, v. PHILIP GRUNER & BROS. LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, April 20, 1909.

1. **SALES: Mistake in Bid.** A lumber company submitted to a contractor a bid to furnish lumber, called for in a list submitted by the contractor, the bid setting out the number of pieces required of each dimension and kind of lumber, with extensions showing the number of feet of each dimension and kind. The bidder made a mistake in calculating and extending the number of feet in one item, showing the number of feet much less than a proper calculation would show. The bid was a lump sum for the lumber described, and was much less than it would have been if the mistake in feet had not been made. The contractor accepted the bid and signed a contract with the owner to erect the building for which the lumber was desired, before discovering or being apprised of the mistake. Means of detecting the mistake were more available to the bidder than to the contractor. *Held,* on a refusal of the bidder to comply with his bid, the contractor could maintain a suit against him for the breach of his contract.

2. ———: ———: **Cautionary Proviso.** A proviso in the printed form of the bid that errors in extensions and footings were subject to correction, did not affect the contractor's right, since he had asked a round bid for the various pieces of lumber of different kinds, and not for a bid by feet, and on the strength of the bid had changed his position by entering a building contract with the owner. [On questions raised by this point the case is identical with Boeckler Lumber Co. v. Cherokee Realty Co., 135 Mo. App. 708, 116 S. W. 452.]

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

AFFIRMED.

*Walther & Muench* for appellants.

If a proposal includes any qualifying conditions, the acceptance of it is an assent to such conditions. The provision in defendant's estimate, "Errors in extensions and footings subject to correction," was a material condition of the plaintiff's offer and meant that the amount of the bid was conditional upon the extensions and footings being correct and that if there were any errors in extensions or footings, there should be a proportionate reduction or increase in the price. 7 Am. and E. Enc. of Law, p. 131; 9 Cyc. of Law, p. 265; 1 Page on Contracts, sec. 61; Mayer v. McCreery, 119 N. Y. 434; Dwight v. Insurance Co., 103 N. Y. 346; Hart v. Vray, 50 Ala. 446; Strong v. Catlin, 35 Ala. 607; Lawrence v. Railroad, 84 Wis. 427; Batavia v. Railroad, 126 Mo. App. 13; Brewer v. Lepman, 127 Mo. App. 693; Falls Wire Co. v. Broderick, 12 Mo. App. 378; Bank v. Farris, 77 Mo. App. 194; Cangas v. Rumsey, 37 Mo. App. 297; Arnold v. Cason, 95 Mo. App. 426; Scott v. Davis, 141 Mo. 225; Taylor v. Von Schrader, 107 Mo. 225. The number of feet mentioned in the bid, and not the number of pieces, must control. Hausmann v. Adams, 65 Mo. App. 273; Ayres v. Hayes, 13 Mo. 175; 29 A. and E. Ency. of Law, p. 632; Wharton on Contracts, sec. 190. Where there is a mutual mistake as to the subject-matter of a contract, there is no meeting of the minds, and consequently no contract. Wharton on Contracts, sec. 177; Green v. Bateman, 2 Woodbury & Minot, 359; Cunningham v. Rotograph Co., 30 D. of C. App., 524; Railroad v. Jackson, 28 Conn. 514; Webster v. Cecil, 30 Beavan 62.

*Carl Otto* for respondent.

STATEMENT.—Plaintiff company was engaged in the year 1907 in taking and executing contracts to build

houses and defendant company was a dealer in lumber in the city of St. Louis. Plaintiff contemplated submitting a competitive bid to the Brown Shoe Company for a contract to build a house for the latter; and in advance of and as a basis for the bid to do the work and furnish the materials for the house, plaintiff was taking under-bids from several lumber dealers in the city to furnish plaintiff the lumber which would be needed. The method of procuring these bids from dealers in lumber was to submit to them a list of the number of pieces of lumber of different kinds and dimensions plaintiff would require and request competitive proposals to furnish said pieces at prices to be stated by the dealers. Plaintiff knew lumber was sold on the St. Louis market by the foot, but in passing on bids was accustomed to pay no attention to the number of feet in the pieces of each kind of lumber mentioned in the offers of the dealers, and to attend only to the amounts of money for which the latter proposed to furnish the lumber. Three bids were submitted by as many dealers to supply plaintiff with the lumber called for in the list plaintiff had submitted, defendant's bid being shown on page 454.

That proposal was on a printed blank with a perforated line running down the side of it. The part of the paper to the right of the perforated line was detached and retained by defendant and will be seen to have contained, opposite the number of feet shown in the right-hand column supra, two other columns, in the first of which the price per foot or thousand feet of each kind of lumber was set down, and in the second column the extensions in dollars and cents of the total price of the lumber of each kind proposed to be furnished. The extensions on this detached slip were not turned over or shown to plaintiff. It will be perceived defendant's bid contained three totals of $2,200, $96 and $76 respectively. A mistake occurred in the tenth item of the bid, which we have italicised, in computing the whole num-

Construction Co. v. Lumber Co.

*Bid Subject to Change Unless Ordered Within Ten Days From Date.*
St. Louis, Mo., March 15, 1907.
PHILIP GRUNER & BROS. LUMBER COMPANY,
Main Office:   4006 N. Broadway; Branch Office; S. E. Corner Ninth
and Cass Avenue.
To CHAPLAINE REALTY & CONST. CO.
Please find below our Estimate for Lumber to be delivered.
To Jefferson Av. & Mullanphy.
For  .........  ...............  ..............  ................

Parties receiving this estimate will please examine the same with care, as we agree to furnish only the articles named herein. Errors in Extension and Footing subject to correction. .We are not responsible for delays caused by strikes or other unavoidable circumstances.

| | | | |
|---|---:|---:|---:|
| 10—14x14—12 No. 1 rgh. Bored 1½ "..1960 | Boring 556 ft. 7c | | 38.92 |
| 10—12x12—14 No. 1 rgh. Bored 1¼ "..1680 | | 30 | 58.80 |
| 10—10x10—14 No. 1 rgh. Bored 1½ "..1167 | | 28 | 43.84 |
| 8—8x8—16 No. 1 rgh. Bored 1½ "..... 683 | | 26 | 3034 |
| 2—8x8—14 No. 1 rgh. Bored 1½ "..... 149 | | | |
| 13—12x14—16 No. 1 rgh..............2912 | 832 | 24 | 19.96 |
| 13—10x16—16 No. 1 rgh..............2774 | | 30 | 87.36 |
| 13—8x16—16 No. 1 rgh..............2218 | | | |
| 13—8x10—16 No. 1 rgh..............1387 | 4992 | 32½ | 162.24 |
| 495—2x14—18 No. 1 rgh...........1732 | | 26 | 36.06 |
| 140—2x10—10 No. 1 rgh..............4200 | | 28 | 48.49 |
| 4600 ft. lin. 1¼x2½ Brdg............4600 lin. | | 25 | 105.— |
| 2200 ft. lin. 4x4 Cedar..............2934 | | 8 | 36.80 |
| 30—4x6—16 No. 1 rgh................ 960 | | 40 | 117.36 |
| 18—4x8—12 No. 1 rgh................ 576 | | | |
| 2—6x6—10 No. 1 rgh................. 60 | | | |
| 9—4x6—10 No. 1 rgh................ 180 | 2920 | 24 | 7008 |
| 14—4x6—18 No. 1 rgh.............. 504 | | 21 | |
| 20—4x6—16 No. 1 rgh.............. 640 | 6820 | 21 | 143.22 |
| 20—2x6—16 No. 1 rgh.............. 320 | | 21 | 745.92 |
| 6500 ft. No. 2 Y. P. Bds..............6500 | | 25 | 480.— |
| 2960 pcs. 2x6—12 No. 1 Y. P. flg....35520 | | 40c | 4.40 |
| 19200 ft. 1x4 No. 2 Maple factory flg. | | | |
| 1100 ft. lin. ⅞x1½ toe strip..........1100 | | | $2228.79 |
| $2200.00 | 1392 | 22 | 30.62 |
| 12—6x6—12 No. 1 Y. P.............. 432 | | | |
| 8—3x10—16 No. 1 Y. P.............. 320 | 3200 | 21 | 67.20 |
| 60—2x4—16 No. 1 Y. P.............. 640 | | | |
| 2400 ft. No. 2 Y. P. Bds..............2400 | | | 97.82 |
| 800 ft. No. 2 Y. P. Bds.............. 800 | | 26½ | 5.67 |
| $96.00 | | | |
| 2—8x10—16 No. 1 Y. P.............. 214 | 454 | 25 | 11.35 |
| 4—8x8—10 No. 1 Y. P.............. 214 | | | |
| 8—6x6—10 No. 1 Y. P.............. 240 | 1488 | 25 | 37.20 |
| 36—4x6—10 No. 1 Y. P.............. 720 | | 23 | 6.62 |
| 24—4x6—16 No. 1 Y. P.............. 768 | | 22 | 4.70 |
| 12—3x6—16 No. 1 Y. P.............. 288 | | 24 | 4.32 |
| 20—2x4—16 No. 1 Y. P.............. 214 | | 21 | 6.30 |
| 6—2x10—18 No. 1 Y. P.............. 180 | | 1c. | 1.00 |
| 300 ft. No. 2 Y. P. Bds.............. 300 | | | |
| 100 ft. lin. 1½x2½ Brdg.............. 100 lin. | | | 77.16 |
| $76.00 | | | |

PHILIP GRUNER & BROS. LUMBER CO.
Per Schroeder.

ber of feet in that item as 1,732 instead of 20,790. This mistake was made by the employee of defendant who calculated the estimate, and in consequence of it defendant offered to furnish the lumber in the first division of its bid for $2,200; whereas, but for the mistake, it would have asked $500 more, or $2,700 for the lumber in that division. Bids were received by plaintiff from two other lumber companies; one of which offered to furnish the lumber called for in the first division of the list for $2,816 and the other for $2,720. Defendant refused to deliver the lumber for the amounts mentioned in its offer as written, plaintiff was compelled to buy elsewhere and brought this action for damages, alleging a breach of contract. Plaintiff's employee who.passed on the proposals, testified he would have known there were more than 1,732 feet of lumber in the tenth item if he had noticed the extensions, but it was not his practice to pay any attention to extensions in feet, and he accepted defendant's bid without detecting the error. The evidence is somewhat contradictory as to whether plaintiff's attention was called to the mistake before it had accepted and acted on the bid, and an issue upon the point was submitted to the jury. Substantial testimony was adduced in plaintiff's behalf to prove it had notified defendant of its acceptance, had sent in its own bid to the Brown Shoe Company for the contract to erect the building, this bid had been accepted by the Shoe Company and plaintiff had signed a contract for the erection of the house before defendant gave notice of the mistake in the bid to furnish the lumber; that plaintiff's proposal to supply the material and labor for the building was based, among other things, on defendant's offer to supply the required lumber at the prices shown in defendant's proposal. The court found a verdict and entered judgment for plaintiff in the sum of $500 and this appeal was taken.

GOODE, J. (after stating the facts).—The rulings on requests for declarations of law indicate the court below thought the case ought to be decided according to legal propositions which may be stated as follows: First, if a mistake occurred in making up defendant's bid, but before the latter had withdrawn or offered to correct it, plaintiff accepted and acted on it, and under such circumstances as would have induced a business man of ordinary prudence to do so, then defendant was bound to comply with its offer; second, if before the bid was accepted plaintiff either knew, or had information to cause an ordinarily prudent man to believe a mistake had been made in the tenth item, the judgment must be for defendant; third, defendant had the right to withdraw its bid any time before acceptance, the burden was on plaintiff to prove it had accepted defendant's offer and communicated with the latter to that effect before the offer was withdrawn and if the court found the bid had not been accepted before plaintiff was notified there was an error in it, the judgment must be for defendant; fourth, if there was a mutual mistake on the part of plaintiff and defendant about the quantity of lumber intended to be embraced in the bid, the judgment must be for defendant; fifth, the clause in the proposal which said errors in footings and extensions were subject to correction, constituted a condition in the contract and entitled defendant to correct the alleged mistake, if it occurred, provided defendant offered to do so before plaintiff had given notice of acceptance and acted on the bid. There was evidence favorable to plaintiff on the several issues of fact and the above findings exclude from the appeal certain contentions: that defendant withdrew its bid, or notified plaintiff of error in it before the latter accepted and acted on it; also that if the miscalculation was due to carelessness on the part of defendant in not verifying the extensions, plaintiff's own negligence contributed to the loss. The testimony was inconsistent on the first of those issues, and on the second the opinion

that plaintiff's negligence contributed to its loss is not irresistible. There was room for the court as trier of the facts, to find defendant exercised less than ordinary business care in framing its proposal, but that, the circumstances considered, plaintiff's acceptance without recalculating the extensions did not fall below said standard. Defendant's employee made the mistake and the proposal passed through the hands of an officer of defendant before it was submitted to plaintiff. The man who attended to the affair for plaintiff, knew lumber was estimated and sold by feet, but in passing on proposals in the form of the one in question, paid attention only to the total amounts and not to the extensions in feet opposite the items, as plaintiff based its own proposals for construction work on the lowest prices offered in the sub-bids submitted to it. What plaintiff wanted to learn from lumber dealers and what it asked for, was the total price for which they would furnish a certain number of pieces of lumber; and naturally it would attend to the amounts and not to the number of feet in the items. Moreover, defendant had the benefit of the slip on which were set down the prices per foot and the total prices of the different items of lumber, and those data were not before plaintiffs. Hence it is obvious more means of detecting the mistake were available to defendant than to plaintiff, wherefore it does not follow that plaintiff was remiss if defendant was.

It is insisted the proviso that errors in extensions and footings were subject to correction, was as much a term of the contract as any other clause, made the sale one of lumber by the foot and bound plaintiff at its peril to ascertain whether the true number of feet in each item was given. At this point, and generally, the case is identical with Boeckler Lumber Co. v. Cherokee Realty Co., 135 Mo. App. 708, 116 S. W. 452, recently decided by us. Out of deference to the earnest brief for defendant we have gone over the question involved again, but without seeing reason to

change our opinion. In the present case, as in that one, plaintiff had asked for a round bid for various pieces of lumber of different kinds and not for a bid by feet; and on the strength of defendant's offer, changed its position by entering into a binding contract with the Brown Shoe Company at a figure which was lower than it otherwise would have accepted. Upon requesting and receiving a lump offer like the one in hand, the offeree would have before him neither separate nor total prices whereby to correct the bid if an error was detected in the extensions, and could do nothing but notify defendant of the mistake. It is not a reasonable interpretation or one compelled by the language of the proposal considered in its entirety, to say defendant meant to impose this gratuitous task on a customer who was interested only in total prices or the latter meant to assume it. That the proviso is not intended to apply to such a bid is indicated further by the word "footings;" for bids in the form of the one in hand contain no footings, but those in which the prices of lumber per foot and total prices are stated would contain them and we think the words in question were intended to be part of a bid of the latter kind. This view is reinforced by the sentence immediately preceding, wherein parties receiving the estimates were warned to examine it with care, as defendant agreed "to furnish only the articles named therein." This remark tended to draw attention to the articles and not to the feet and shows defendant was proposing to furnish the listed articles, not a certain quantity of feet of each. The argument that the clause in question accorded defendant the right to have the mistake corrected at plaintiff's expense after it had changed its attitude by binding itself in a contract with the Shoe Company, implies that however negligent defendant may have been as compared with plaintiff, the latter must bear the consequent loss. Possibly defendant might have been released from its offer, even if plaintiff had become apprised of the mistake after acceptance, but

before so far changing its position that it would have to stand a loss unless defendant was held bound. As to that we do not say, for the case is presented in a different phase. Counsel for defendant have directed us to some opinions which we will cite with the remark that they were given on facts unlike those at bar, either in that the party seeking to take advantage of the mistake had not acted in good faith, the mistake was called to his attention before he had altered his position, or to correct it would not put him in a less favorable situation than otherwise he would have occupied. [Hartford, etc., R. R. Company v. Jackson, 24 Conn. 513; Rowland v. Railroad, 61 Conn. 103; Gulf, etc., Railroad Company v. Dawson (Texas), 24 S. W. 560; Butler v. Moses, 43 Ohio St. 166; Mummerhoff v. Randall, 19 Ind. App. 44; Cunningham Mfg. Co. v. Rotograph Company, 30 Dist. Col. App. 524; Moffett v. Rochester, 178 U. S. 373.] Those cases, except possibly the first three, are squarely against defendant's contentions, and in those three it did not appear the party against whom the mistake was corrected was left any worse off than he would have been had it not occurred. The following authorities are in point for plaintiff and some of them rest on facts practically identical with those before us. [Griffin v. O'Neil, 48 Kan. 117; Coates v. Early, 46 S. C. 220; Borden v. Railroad, 113 N. C. 570; Brown v. Levi, 29 Tex. Civ. App. 389; Pond-Decker Lumber Co. v. Spencer, 86 Fed. 46; Durgin v. Smith (Mich.), 94 N. W. 1044; Western, etc., Railroad v. Babcock, 6 Metc. 346; Crilly v. Board of Education, 54 Ill. App. 371; Putmans Sons v. Macleod, 23 R. I. 373, 377; Smith v. Hughes, L. R. 6 Q. B. 597; Maguire v. DeFrese, 79 Mo. App. 683; 1 Wharton, Contracts, sec. 202; 1 Paige, Contracts, sec. 79.]

The judgment is affirmed. All concur.