**Earnest BRASHIER, Plaintiff–Appellee,**

v.

**FARMERS INSURANCE COMPANY, INC., and Farmers Insurance Exchange, Defendants–Appellants.**

No. 82512.

Supreme Court of Oklahoma.

July 16, 1996.

Greg D. Givens, Robert D. Ramage, Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma City, for Appellants.

Bradley C. West, Terry W. West, Shawnee, for Appellee.

OPALA, Justice.

Certiorari was granted on insured's petition to determine whether—*qua* victor in a tort claim against his UM insurer for bad-faith refusal to pay an insurance loss—the insured was entitled to counsel fee, prejudgment interest and costs. Tendered are three issues: [1] Does the exclusion of UM coverage from the terms of 36 O.S.1991 § 3629(B) [1] abrogate the common law of tort liability settled by *Christian v. American Home Assur. Co.* [2] insofar as counsel-fee recovery constitutes an element of damages in a bad-faith tort claim? [2] Are the proceeds of UM indemnity to be treated in law as a

---

1. For the pertinent terms of 36 O.S.1991 § 3629(B), see *infra* note 4.

2. Okl., 577 P.2d 899 (1978).

personal injury recovery, which qualifies them for 12 O.S.1991 § 727[3] prejudgment interest? and [3] Are costs recoverable in a bad-faith claim against a UM carrier?

We answer the first question in the negative and the second and third in the affirmative.

## I

### THE ANATOMY OF LITIGATION

Earnest Brashier [Brashier or insured] was injured on July 2, 1990 while riding in a pickup that was hit by a vehicle owned by C & L Trucking. The latter carried an insurance policy with $100,000 liability limits per person. Brashier had UM coverage with Farmers Insurance Co., Inc. and Farmers Insurance Exchange [UM insurer or Farmers], limited to $10,000 per person. C & L Trucking's insurer tendered its policy's limits and Farmers waived subrogation but refused to make any UM payment to Brashier because its adjuster believed the value of Brashier's claim did not exceed $100,000.

Brashier sued his UM carrier, alleging breach of its implied-in-law duty of good faith and fair dealing. The jury returned a verdict for Brashier, awarding him $25,000 in compensatory damages and $25,000 in punitive damages. The trial court allowed Brashier (a) counsel fee of $26,387.50, rested on the terms of 36 O.S.1991 § 3629(B)[4] and *Christian* (both authorities were cited);[5] (b) counsel fee of $5,000, based on *Oliver's Sports Center, Inc. v. National Standard*

*Ins. Co.;*[6] (c) prejudgment interest of $12,-328.77, grounded in § 3629(B); and (d) costs of $1,591.67. Both Brashier and Farmers brought an appeal. The Court of Appeals affirmed the judgment on jury verdict but reversed the trial court's award of counsel fee, prejudgment interest and costs. It held that the legislative *exclusion of UM coverage* from the benefits to be conferred by § 3629(B) extends to bad-faith actions for failure to pay a UM-coverage claim. This court granted Brashier's quest for certiorari review of that portion of the appellate court's opinion which reverses the allowance of counsel fee, prejudgment interest and costs.[7]

## II

### THE COUNSEL–FEE AWARD

Brashier argues that because he was the prevailing party in a bad-faith claim against his UM insurer for failure to pay under the terms of an insurance policy, he is entitled to a counsel-fee award under the teachings of *Christian*, as well as under the terms of § 3629(B), which sources, when combined, serve to support the allowance of counsel fee and prejudgment interest in *all* insurance litigation other than that for *ex contractu* recovery of UM coverage. The exclusion of UM coverage, Brashier urges, applies only to actions brought directly against the insurer for recovery of UM proceeds. He argues that because the terms of § 3629(B) have been used as a basis for awarding counsel fees, costs and interest in other insurance bad-faith actions,[8] it should

---

3. For the pertinent terms of 12 O.S.1991 § 727, see *infra* note 26.

4. The terms of 36 O.S.1991 § 3629(B) provide:
 "B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at a rate of fifteen percent (15%) per year from the date the loss

was payable pursuant to the provisions of the contract to the date of verdict. *This provision shall not apply to uninsured motorist coverage.*" (Emphasis added.)

5. *Christian, supra* note 2.

6. Okl., 615 P.2d 291 (1980).

7. Both Brashier and insurer sought certiorari review. *The insurer's petition was denied by this court's January 8, 1996 order.*

8. In support of his position, insured cites *Also-brook v. National Travelers Life Insurance Co.,* Okl.App., 852 P.2d 768 (1992)(health insurance); *City National Bank v. Jackson National Life Ins.,* Okl.App., 804 P.2d 463 (1990)(life insurance); *Oliver, supra* note 6 (fire insurance); *Thompson*

also apply to his case. The insurer counters that § 3629(B) excludes not only *ex contractu* claims under the UM coverage but also *ex delicto* bad-faith claims for refusal to pay the UM policy limits.

### A.

#### The Teachings of Christian and its Progeny

 Bad-faith refusal to settle a claim was first recognized as a distinct tort in *Christian.*[9] The claim rests on the insurer's implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.[10] *Christian,* which shaped our common law of tort, made counsel fees an element of the insured's damage recovery for insurer's bad-faith refusal to pay the claim.[11] A *Christian* counsel-fee plea is a part of the claim; it *does not depend on an insured's prevailing party status.*

There can be no doubt that Brashier is entitled to a counsel-fee award under the bad-faith tort rubric of *Christian.* What remains to be determined is the effect of § 3629(B) upon the *viability of his common-law Christian counsel-fee award.*

### B.

#### Statutorily-based Counsel–Fee Award

 By statutory mandate the common law remains in full force unless a statute *explicitly* provide to the contrary.[12] Legislative abrogation of the common law may not be effected by *implication.*[13] Statutory alteration must be clearly and plainly *expressed.*[14] An intent to change the common law will not be presumed from an ambiguous, doubtful or inconclusive text.[15] A revered presumption favors the preservation of common-law rights.[16] Where the common law gives a remedy, and another is provided by statute, the latter is merely cumulative, unless the statute declares it to be exclusive.[17]

v. *Shelter Mutual Ins.,* 875 F.2d 1460 (10th Cir. 1989)(fire insurance). We note that *McCorkle v. Great Atlantic Ins. Co.,* Okl., 637 P.2d 583 (1981)(a bad-faith fire insurance action) also relies on § 3629(B) for awarding a counsel fee.

9. *Christian, supra* note 2 at 904, adopts the California view and characterizes the bad-faith breach of an insurer's duty to pay as sounding " 'in both contract and tort' ". A tort will be deemed to arise out of a contractual relationship if the delictual duty breached and the contract are so intertwined that one cannot be viewed in isolation from the other because the detriment sought to be vindicated arose directly from performance or nonperformance of the contract. *Christian, supra* note 2 at 904. For the California view, see *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 484, 510 P.2d 1032, 1036 (1973).

10. *Christian, supra* note 2 at 901. Our current remedial regime gives the insured a choice between two alternative theories of recovery—one founded on promise-generated liability and the other on insurer's duty of good faith implied from his status or derived from public policy considerations. *State ex rel. Burk v. City of Oklahoma City,* Okl., 598 P.2d 659, 661 (1979).

11. While numerous items of damage may result from one injurious occurrence, the party who seeks to recover for *one insured loss* has but a single cause of action, although the claim may be advanced concurrently on *ex contractu* and *ex delicto* theories. *Mann v. State Farm Mut. Auto. Ins. Co.,* Okl., 669 P.2d 768, 772 (1983).

12. 12 O.S.1991 § 2. Its relevant terms provide:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; . . .".

13. *Tate v. Browning–Ferris,* Okl., 833 P.2d 1218, 1225–1226 (1992); *Silver v. Slusher,* Okl., 770 P.2d 878, 884 (1989); *Ricks Exploration v. Okl. Water Resources Bd.,* Okl., 695 P.2d 498, 504 (1984); *Roxana Petroleum Co. v. Cope,* 132 Okl. 152, 269 P. 1084, 1085 (syl.3) (1928); *Reaves v. Reaves,* 15 Okl. 240, 82 P. 490, 495 (1905); *State Mut. Life Assur. Co. of Amer. v. Hampton,* Okl., 696 P.2d 1027, 1036 (1985) (Opala, J., concurring).

14. *Tate, supra* note 13 at 1225–1226; *Fuller v. Odom,* Okl., 741 P.2d 449, 451 (1987); *McCormack v. Oklahoma Pub. Co.,* Okl., 613 P.2d 737, 740 (1980); *Reaves, supra* note 13 82 P. at 495; *Hampton, supra* note 13 at 1036 (Opala, J., concurring).

15. *Reaves, supra* note 13 82 P. at 495; *Hampton, supra* note 13 at 1036 (Opala, J., concurring).

16. *Reaves, supra* note 13 82 P. at 495.

17. *Bowles v. Neely,* 28 Okl. 556, 115 P. 344, 346 (1911). Instances in which the common-law system of remedies continues side by side with a statute that evinces no legislative intent to supplant it are not uncommon in Oklahoma juris-

■ Section 3629, first enacted in 1957, required (by its original version) that the insurer furnish proof of loss forms to any person claiming a loss under an insurance contract. On June 3, 1977, *before Christian* was handed down, subsection B was approved (to be effective Oct. 1, 1977).[18] Added by that subsection was the requirement that an insurer submit a written settlement offer within a specified time and a provision for allowance of *costs and counsel fee to the prevailing party.* Explicitly excluded from this provision was UM coverage. Subsection B was last amended in 1985 to allow the prevailing party's recovery of interest on the verdict (15% annually).[19] Neither the pre- nor post-*Christian* amendment of § 3629 indicates legislative intent to supplant the common law. Because the statute's exclusion of UM coverage is *not all-inclusive*, we hold that the terms of § 3629 may be made applicable solely to contract-based UM claims and cannot affect recovery for a bad-faith tort claim against a UM carrier who did not prevail when sued *ex delicto* for refusal to settle. In short, we view the terms of § 3629(B) as *not inconsistent with the teachings of Christian.*

### C.

### *The Teachings of Oliver*

■ Brashier argued below and on certiorari that the *Oliver* "litigation risk factor" (the risk of non-recovery)[20] should be considered in awarding him counsel fees. He was allowed that additional counsel-fee recovery

of $5,000. It was based on *Oliver*'s teachings. The insurer's certiorari brief is silent on this issue, although its appellate brief urges that the entire counsel-fee award is "excessive and unreasonable."

*Oliver* incorporates the *State ex rel. Burk v. City of Oklahoma City*[21] common-law criteria for measuring the counsel-fee award and teaches that the contingent nature of the litigation is one factor to be considered when setting the amount.[22] According to *Oliver*, the correct procedure for arriving at a reasonable fee is to (a) first determine the compensation based on an hourly rate and (b) *then enhance it by adding an amount computed according to the Burk guidelines.* A bad-faith counsel-fee award that is rested on the *Oliver* risk-litigation factor is entirely consistent with the teachings of *Christian*[23] and *Burk.*[24]

■ Attached to Brashier's nisi prius counsel-fee application is a detailed list of the hours spent in the prosecution of the litigation. According to counsel for the insured, 258 hours had been expended by four lawyers, each charging different hourly rates, which totaled $32,262.50. Brashier's trial brief pressed for an amount to be added to the sum total of hourly compensation as an *Oliver* risk-litigation premium. We hold that the trial court's *basic* counsel-fee award to Brashier of $26,387.50 and an *additional* allowance of $5,000 for the *Oliver* factor rest on competent evidence. Gauged by the applicable common-law standards of review, the amount awarded is not excessive.[25]

prudence. *See, e.g., Hood v. Hagler,* Okl., 606 P.2d 548, 552–553 (1980); *In re Adoption of Graves,* Okl., 481 P.2d 136, 138 (1971); *Hampton, supra* note 13 at 1036 (Opala, J., concurring).

18. Subsection B of § 3629 was approved June 3, 1977 to become effective October 1, 1977 (Okl. Sess.L.1977, Ch. 133, § 1). *Christian, supra* note 2, was adopted July 12, 1977; rehearing was denied April 26, 1978.

19. Okl.Sess.L.1985, Ch. 79, § 1, eff. November 1, 1985. For the text of 36 O.S.1991 § 3629(B), see *supra* note 4.

20. *Oliver, supra* note 6 at 294 n. 4.

21. *Burk, supra* note 10 at 661.

22. The court notes that where a lawyer's compensation is contingent, the trial court must adjust upward the basic hourly rate by allowing a risk-litigation premium based on the likelihood of success at the outset of the representation. *Oliver, supra* note 6 at 294.

23. *Christian, supra* note 2, at 904.

24. *Burk, supra* note 10 at 661.

25. Whenever in a common-law action triable to a jury, *counsel fee is awarded as an additional element of recoverable damage, the amount of the fee to be allowed is reviewable on appeal by the common-law standard of "any competent evidence".* See *Holland Banking Co. v. Dicks,* 67 Okl. 228, 170 P. 253, 256 (1918), adopting this principle, first announced by the Kansas court in

## III

### THE PREJUDGMENT INTEREST AWARD

 Brashier argues he is entitled to prejudgment interest authorized by the terms of § 3629(B) or, in the alternative, by the general statute, 12 O.S.1991 § 727(A)(2).[26] The insurer counters that because Brashier's quest below was pressed solely in reliance on § 3629, and the Court of Appeals found that statute to be inapplicable to a bad-faith claim, he cannot now change theories on appeal.

 The applicable statute, 12 O.S.1991 § 727(A)(2), provides for prejudgment interest upon a verdict "by reason of personal injuries".[27] UM coverage is a first-party indemnity paid by the insurer for bodily injury sustained by the insured, for which the latter is legally entitled to recover from the uninsured, underinsured or hit-and-run motorist.[28] In contemplation of law, the UM coverage proceeds stand as a substituted res for personal injury recovery the insured would have received from the uninsured or underinsured tortfeasor. Because the UM recovery represents recompense for one's personal injuries,[29] a judgment in a bad-faith claim for loss sustained by a UM insured would entitle the victor to the § 727(A)(2) prejudgment interest.

 Brashier's failure to press for prejudgment interest due under § 727(A)(2) is no bar to its recovery. A legally correct judgment will not be reversed because of the judge's faulty reasoning, erroneous fact finding or consideration of an immaterial issue.[30] Because the prejudgment interest award is erroneously rested upon the provisions of § 3629(B), we reverse that allowance and remand the cause for reassessment of that element of recovery under the provisions of § 727.

## IV

### COSTS

 Nisi prius taxable costs fall into two categories: (a) ordinary court costs—items that the clerk may tax *de cursu*[31] and (b) litigation expenses that may have arisen in an equity suit or in an ancillary equitable

*Missouri Pac. Ry. Co. v. Merrill*, 40 Kan. 404, 19 P. 793 (1888).

**26.** The pertinent terms of 12 O.S.1991 § 727(A)(2) are:

"When a verdict for damages by reason of *personal injuries* ... is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at a rate prescribed pursuant to subsection B of this section from the date the suit was commenced to the date of verdict. ..." (Emphasis added.)

**27.** *Timmons v. Royal Globe Ins. Co.*, Okl., 713 P.2d 589, 590 (1986), teaches that when a verdict covers more than purely personal injury, § 727 applies to those severed (or severable) elements of recovery in the verdict which represent an identifiable personal injury element.

**28.** *Uptegraft v. Home Ins. Co.*, Okl., 662 P.2d 681, 685 (1983). *See* also the provisions of 36 O.S. 1991 § 3636(A) and (B), which require that UM coverage be offered on demand as part of the cluster of rights intended to protect the motoring public from consequences of bodily injury inflicted by resourceless drivers.

**29.** *Carney v. State Farm Mut. Auto. Ins. Co.*, Okl., 877 P.2d 1113, 1119 (1994); *Torres v. Kansas*

*City Fire and Marine Ins. Co.*, Okl., 849 P.2d 407, 414 (1993).

**30.** *See Estate of Maheras*, Okl., 897 P.2d 268, 272 (1995); *Matter of Estate of Pope*, Okl., 808 P.2d 640, 646 (1990); *Willis v. Nowata Land and Cattle Co.*, Okl., 789 P.2d 1282, 1286–87 (1989); *Davidson v. Gregory*, Okl., 780 P.2d 679, 685 n. 23 (1989); *Matter of Estate of Bartlett*, Okl., 680 P.2d 369, 374 (1984); *Carpenter v. Carpenter*, Okl., 645 P.2d 476, 480 (1982); *Utica Nat'l Bank and Trust v. Assoc. Prod.*, Okl., 622 P.2d 1061, 1066 (1981); *Holloway v. Ward*, 84 Okl. 247, 203 P. 217, 219 (1922).

**31.** Our costs regime allows costs to be taxed "of course", as provided in 12 O.S.1991 §§ 927 and 928. For definition of costs taxable *de cursu*, see *Chamberlin v. Chamberlin*, Okl., 720 P.2d 721, 726 n. 25 (1986); *Fleet v. Sanguine*, Okl., 854 P.2d 892, 902 (1993). The terms of 12 O.S.1991 § 928 are:

Where it is not otherwise provided by this and other statutes, *costs shall be allowed of course to the plaintiff*, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific, real or personal property.

proceeding.[32] Only those expenditures which are taxable by statute fall within the term "costs".[33]

▮ The insurer concedes that Brashier, *qua* prevailing party on the jury verdict, is entitled to the statutorily recoverable costs. Brashier attached to his counsel-fee application below a breakdown of costs totaling $1,591.67. We hold that these costs were correctly taxed *de cursu* against the insurer.

## V

## SUMMARY

The language of § 3629[34] is not comprehensive enough to abrogate the teachings of *Christian* and *Burk.* At the very most, § 3629 *dis*allows recovery of counsel fee by the prevailing party in a contract action to enforce UM coverage. Prejudgment interest is allowed in a bad-faith tort claim under the provisions of 12 O.S.1991 § 727(A)(2)[35] because UM proceeds constitute in law a substituted res for personal injury recovery. Under the statutory costs regime, 12 O.S. 1991 § 928,[36] costs may be allowed *de cursu* to the plaintiff-insured upon a judgment in its favor. That statute allows costs to be taxed "of course" to one in whose favor judgment was entered in an action for the recovery of money. On certiorari previously *granted solely on the insured's petition,*

THE COURT OF APPEALS' OPINION IS VACATED ONLY INSOFAR AS IT REVERSES THE AWARD OF COUNSEL FEE, PREJUDGMENT INTEREST AND COSTS, AND THE TRIAL COURT'S JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART WITH THE CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, OPALA and WATT, JJ., concur.

SIMMS and SUMMERS, JJ., concur in part and dissent in part.

LAVENDER, J., dissents.

HARGRAVE, J., disqualified.

SIMMS, Justice, concurring in part, dissenting in part:

I respectfully dissent in part from the majority decision. In my opinion the Court of Appeals was correct in reversing the trial court's award of attorney fees to plaintiff. His claim for bad faith damages was grounded on the uninsured motorist clause and was therefore excluded from coverage under 36 O.S.1991 § 3629(B), as determined by the Court of Appeals.

Additionally, *Christian v. American Home Assur.Co.,* Okl., 577 P.2d 899 (1977), does not support awarding attorney fees to plaintiff here. Contrary to the majority's assertions, *Christian* does not stand for the rule that attorney fees are always available in bad faith cases. In *Christian* there was a clear showing of willful, malicious and oppressive conduct by the insurer. In deciding *Christian,* this Court recognized the rule that ordinarily attorney fees may not be recovered in the absence of an agreement or statutory authority. We remanded the matter to the trial court, however, to determine whether under those particular facts, appellant came with the exception to that rule established in *City Nation Bank v. Owens,* Okl., 565 P.2d 4 (1977), allowing recovery of attorney fees upon a showing of misconduct during litigation. The facts here are clearly distinguishable.

The majority exaggerates *Christian* beyond recognition in stating it made attorney fees an "element of the insured's damage recovery" for a bad faith refusal to pay a

**32.** Equitable litigation expenses (as opposed to ordinary costs taxable *de cursu* ) are explained in *Rand v. Nash,* 174 Okl. 525, 51 P.2d 296, 297–298 (1935).

**33.** *Dulan v. Johnston,* Okl., 687 P.2d 1045, 1048 (1984).

**34.** For the pertinent terms of 36 O.S.1991 § 3629, see *supra* note 4.

**35.** For the pertinent terms of 12 O.S.1991 § 727(A)(2), see *supra* note 26.

**36.** For the pertinent terms of 12 O.S.1991 § 928, see *supra* note 31.

claim and a part of the plaintiff's claim not dependent on an insured's prevailing party status.